# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| **KAREN TAYLOR, et al.,** | } |
| **Plaintiffs,** | } |
| v. | } Case No.: 2:13-cv-00760-MHH |
| **SUMMER CLASSICS, INC.,** | } |
| **Defendant.** | } |

## MEMORANDUM OPINION

This opinion concerns five proposed FLSA settlements. In their Amended Complaint, plaintiffs Karen Taylor, Cora Bray Wilson, Cherry Washington, Carolyn Ducker, and Loretta Stacy contend that their employer, defendant Summer Classics, Inc. ("Summer Classics"), violated provisions of the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq*. The parties have agreed to settle the plaintiffs' FLSA claims, and they have asked the Court to review the terms of the proposed settlements. (Docs. 13, 13-1). For the reasons stated below, the Court approves the FLSA settlements because they are a fair and reasonable compromise of a bona fide dispute.

I.     BACKGROUND

Plaintiff Taylor filed this lawsuit on April 23, 2013, on behalf of herself and all similarly situated former and current Summer Classics employees. (Doc. 1). The Amended Complaint added four other Summer Classics employees as named plaintiffs. (Doc. 13, p. 1).[1]

Southern Classics manufactures outdoor patio furniture. (Doc. 13, ¶ 2). The plaintiffs assert that they worked for Southern Classics as seamstresses. (Doc. 11, ¶¶ 14-18). According to the plaintiffs, in late 2011 or early 2012, Southern Classics began compensating them on a "piecework" basis instead of an hourly basis. (Doc. 11, ¶ 19). The plaintiffs allege that when Southern Classics changed its compensation scheme, they were earning approximately $12.60 per hour. (Doc. 11, ¶ 19). The plaintiffs maintain that since changing the method of compensation, Southern Classics has failed to keep adequate records of the time the plaintiffs worked. (Doc. 11, ¶ 20). Plaintiffs also contend that Southern Classics has "failed and/or refused to compensate [them] and similarly situated employees in compliance with fair labor standards for minimum wage and overtime hours worked in excess of 40 hours in a given work week." (Doc. 11, ¶ 21).

---

[1] Plaintiffs Taylor, Wilson, Washington, and Ducker are all former employees. (Doc. 11, ¶¶ 14-17). Plaintiff Stacy currently is employed by Southern Classics. (Doc. 11, ¶ 18).

The plaintiffs further state that they "regularly worked a ten-hour shift, five to six days per week, and thus averaged between fifty and sixty hours per week." (Doc. 11, ¶ 22). According to the plaintiffs, Southern Classics was aware that the plaintiffs "routinely worked in excess of 40 hours per week," yet the company failed to pay the plaintiffs for their overtime hours. (Doc. 11, ¶ 23). According to the Amended Complaint, plaintiff Taylor complained to her supervisor and "lead man" that she was not being paid minimum wage or compensated for overtime, but Southern Classics "took no action to address the situation other than to terminate [her] employment." (Doc. 11, ¶ 25).

Southern Classics disputes the plaintiffs' contentions. The company admits that it paid the plaintiffs on a piece-rate basis from October 24, 2011 until September 23, 2012; however, Southern Classics contends it correctly paid the plaintiffs under this system of compensation. (Doc. 13, p. 2, ¶¶ 5-7; Doc. 13, p. 3, ¶ 9). The company disputes the number of hours each plaintiff may have worked in excess of 40 hour in each work week. (Doc. 13, p. 4, ¶ 3).

For purposes of settlement, the parties agreed to calculate the number of hours the plaintiffs worked by using a formula based upon hours recorded for Summer Classics "zipper" employees who worked side by side with the plaintiffs on the same shifts but who were paid hourly. (Doc. 13, p. 4, ¶¶ 4-5). The

plaintiffs acknowledge that this method is the most reliable manner in which to calculate their actual hours worked and the amount of overtime compensation due. (Doc. 13, p. 5, ¶ 6). Using this formula, in exchange for dismissal of the claims against it with prejudice, Southern Classics has agreed to pay overtime compensation and liquidated damages to the five plaintiffs in the following total amounts:

- Karen Taylor: $983.75

- Cora Bray Wilson: $1,1318.20

- Cherry Washington: $1,625.70

- Carolyn Ducker: $1,887.70

- Loretta Stacy: $1,713.10

(Doc. 13, pp. 5-6, ¶ 6). Additionally, plaintiff Taylor agrees that Summer Classics had a legitimate, non-retaliatory basis for terminating her employment. (Doc. 13, p. 5, ¶ 7).

The parties also agree that $10,000 is a reasonable attorney's fee including reimbursement of costs. The parties submit that, prior to preparing for and participating in the settlement approval hearing in this matter, plaintiffs' counsel has itemized billing statements documenting over 32 hours in the prosecution of this action and out of pocket expenses totaling $487.66.

4

(Doc. 13, p. 5, ¶ 8). Plaintiffs' counsel has agreed to accept a lump sum of $10,000 in full satisfaction of all of the plaintiffs' claims for fees and expenses incurred. (Doc. 13, p. 5, ¶ 8).

The parties have represented to the Court that they believe that their proposed settlement agreement reflects a fair and reasonable compromise of their dispute. (Doc. 13, p. 6, ¶ 4; transcript from January 23, 2013 hearing regarding motion to approve FLSA settlement). The proposed settlement agreements do not contain confidentiality or general release provisions.[2] (Doc. 13-1, Exs. A-E).

On this record, the Court considers the parties' motion to approve the proposed settlement of the plaintiffs' FLSA claims.

---

[2] "[C]onfidentiality clauses and pervasive release provisions generally render a FLSA settlement agreement unfair and unreasonable." *Vinson v. Critter Control, Inc.*, 2012 WL 6737508, at *2 (S.D. Ala. Dec. 28, 2012); *Hogan*, 821 F. Supp. 2d at 1282 (same). Confidentiality provisions in FLSA settlements are particularly problematic because they "have the potential to hinder unfairly the congressional goal of universal compliance with the FLSA," thereby affecting both the private and public interests that the FLSA protects. *Id.*; *see also Stalnaker*, 293 F. Supp. 2d at 1264 ("Absent some compelling reason, the sealing from public scrutiny of FLSA agreements between employees and employers would thwart the public's independent interest in assuring that employees' wages are fair and thus do not endanger 'the national health and well-being.'") (quoting *Brooklyn Savings Bank*, 324 U.S. at 706); *Dees*, 706 F. Supp. 2d at 1242 ("a confidentiality provision furthers resolution of no bona fide dispute between the parties; rather, compelled silence unreasonably frustrates implementation of the 'private-public' rights granted by the FLSA and thwarts Congress's intent to ensure widespread compliance with the statute."). The Court recognizes that there may be instances in which confidentiality provisions and other pervasive release provisions may be appropriate, but those instances are rare, and the parties must provide compelling reasons for the Court to approve an agreement containing such provisions. *Stalnaker*, 293 F. Supp. 2d at 1264; *Crabtree v. Volkert, Inc.,* 2012 WL 6093802 (S.D. Ala. Dec. 7, 2012).

## II. DISCUSSION

"Congress enacted the FLSA in 1938 with the goal of 'protect[ing] all covered workers from substandard wages and oppressive working hours.' Among other requirements, the FLSA obligates employers to compensate employees for hours in excess of 40 per week at a rate of 1 ½ times the employees' regular wages." *Christopher v. SmithKline Beecham Corp.*, 132 S. Ct. 2156, 2162 (2012) (quoting *Barrentine v. Arkansas-Best Freight System, Inc.*, 450 U.S. 728, 739 (1981)); *see also* 29 U.S.C. §§ 202, 207(a).[3] Congress designed the FLSA "to ensure that *each* employee covered by the Act would receive '[a] fair day's pay for a fair day's work' and would be protected from 'the evil of 'overwork' as well as 'underpay.'" *Barrentine*, 450 U.S. at 739 (emphasis in original). In doing so, Congress sought to protect, "the public's independent interest in assuring that employees' wages are fair and thus do not endanger 'the national health and well-being.'" *Stalnaker v. Novar Corp.*, 293 F. Supp. 2d 1260, 1264 (M.D. Ala. 2003) (quoting *Brooklyn Sav. Bank v. O'Neil,* 324 U.S. 697, 706 (1945)).

If an employee proves that his employer violated the FLSA, the employer must remit to the employee all unpaid wages or compensation, liquidated damages in an amount equal to the unpaid wages, a reasonable attorney's fee, and costs. 29

---

[3] The parties agree that under Southern Classics' piece-rate compensation system, overtime is calculated based on ½ of the applicable regular rate instead of 1 ½ of the applicable regular rate. (Doc. 13, p. 3, ¶ 1).

6

U.S.C. § 216(b). "FLSA provisions are mandatory; the 'provisions are not subject to negotiation or bargaining between employer and employee.'" *Silva v. Miller*, 307 Fed. Appx. 349, 351 (11th Cir. 2009) (quoting *Lynn's Food Stores, Inc. v. U.S. ex. Rel. U.S. Dep't of Labor*, 679 F.2d 1350, 1352 (11th Cir. 1982)); *see also Brooklyn Sav. Bank v. O'Neil,* 324 U.S. 697, 707 (1945). "Any amount due that is not in dispute must be paid unequivocally; employers may not extract valuable concessions in return for payment that is indisputedly owed under the FLSA." *Hogan v. Allstate Beverage Co., Inc.*, 821 F. Supp. 2d 1274, 1282 (M.D. Ala. 2011).

Consequently, parties may settle an FLSA claim for unpaid wages only if there is a bona fide dispute relating to a material issue concerning the claim. To compromise a claim for unpaid wages, the parties must "present to the district court a proposed settlement, [and] the district court may enter a stipulated judgment after scrutinizing the settlement for fairness." *Lynn's Food*, 679 F.2d at 1353*; see also Hogan*, 821 F. Supp. 2d at 1281-82.[4] "[T]he parties requesting

---

[4] In *Lynn's Food*, the Eleventh Circuit Court of Appeals explained, "[t]here are only two ways in which back wage claims arising under the FLSA can be settled or compromised by employees. First, under section 216(c), the Secretary of Labor is authorized to supervise payment to employees of unpaid wages owed to them. An employee who accepts such a payment supervised by the Secretary thereby waives his right to bring suit for both the unpaid wages and for liquidated damages, provided the employer pays in full the back wages. The only other route for compromise of FLSA claims is provided in the context of suits brought directly by employees against their employer under section 216(b) to recover back wages for FLSA violations. When employees bring a private action for back wages under the FLSA, and present

7

review of an FLSA compromise must provide enough information for the court to examine the bona fides of the dispute." *Dees v. Hydradry, Inc.*, 706 F. Supp. 2d 1227, 1241 (M.D. Fla. 2010).  The information that the parties provide also should enable the Court "to ensure that employees have received all uncontested wages due and that they have received a fair deal regarding any additional amount that remains in controversy." *Hogan*, 821 F. Supp. 2d at 1282.  "If a settlement in an employee FLSA suit does reflect a reasonable compromise over issues, such as FLSA coverage or computation of back wages, that are actually in dispute," then a court may approve a settlement.  *Lynn's Food*, 679 F.2d at 1354; *see also Silva*, 307 Fed. Appx. at 351 (proposed settlement must be fair and reasonable).

Based on the Court's review of the proposed settlement agreements and the information that the parties submitted regarding the terms of the proffered settlement, the Court finds that there is a bona fide dispute in this matter that supports the proposed settlement.  The settlement proceeds represent a fair and reasonable compromise based on the existing evidence regarding unpaid wages. Summer Classics admits that it did not record the hours actually worked by the

---

to the district court a proposed settlement, the district court may enter a stipulated judgment after scrutinizing the settlement for fairness."  679 F.2d at 1352-53 (footnotes omitted).  The Eleventh Circuit recently reiterated the import of *Lynn's Food*.  *See Nall v. Mal–Motels, Inc.*, 723 F.3d 1304 (11th Cir. 2013).

plaintiffs when it began paying them on a piece-rate basis.  Although the parties dispute the number of overtime hours that the plaintiffs worked, Southern Classics admits that it owes the plaintiffs some amount of overtime compensation.  The parties agreed upon a method to calculate the overtime hours that the plaintiffs worked and the compensation and liquidated damages due to each plaintiff.  The Court finds that the method used to calculate the plaintiffs' unpaid wages is fair and reasonable under the circumstances of this case.

### III.  CONCLUSION

For the reasons stated above, the Court approves the parties' proposed settlement of the plaintiffs' claims.  The Court concludes that there is a bona fide dispute regarding the plaintiffs' FLSA claims, and the terms that the parties have negotiated constitute a fair and reasonable resolution of that dispute.  The Court will enter a separate order dismissing the plaintiffs' FLSA claims with prejudice.

**DONE** and **ORDERED** this January 23, 2014.

_____
**MADELINE HUGHES HAIKALA**
UNITED STATES DISTRICT JUDGE